In the United States Bankruptcy Court
For the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 24-34705 |
| Valencia Hospitality Group, LLC | § | Chapter 11 |
| *Debtor* | § | |

**Debtor's Plan of Reorganization for Small Business Under Subchapter V of Chapter 11**

Debtor Valencia Hospitality Group, LLC (sometimes referred to as the "Debtor"), files this Plan of Reorganization (the "Plan") under Subchapter V of Chapter 11, and pursuant to 11 U.S.C. §§ 1189 and 1190. As required under the Bankruptcy Code (the "Code"), the Plan classifies claims and interests in various classes according to their right to priority of payments as provided under the Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Bankruptcy Court (the "Court") will be asked by the Debtor to confirm this Plan pursuant to 11 U.S.C. 1191(b), if necessary. If the Court confirms the Plan, then the Plan will be binding on the Debtor, all creditors and interest holders, and other parties-in-interest in this case.

**Please read this document carefully and consult with your legal advisor.**

**Background**

**A.     Description and History of the Debtor's Business**

Valencia's Tex-Mex Garage opened for business on Nov. 1, 2020, in the Oak Forest neighborhood of Houston, Texas. The restaurant was new construction that took approximately five months to build. This was a bit challenging since Covid regulations were in force. At the time of opening, government limited capacities and stipulations were in place. The restaurant was allowed to serve less guests than the total occupancy. This did allow a new business the opportunity to open, train staff and provide better service to our guests. We had to follow the

Covid Guidelines through the following May of 2021.

The restaurant operates as a Tex-Mex restaurant. It is managed and operated by Rico Valencia, the owner of the Debtor. Mr. Valencia previously operated and managed the successful Cyclone Anaya's Mexican restaurant chain before the chain was sold. Valencia's Tex-Mex Garage was received well by the community and deemed a success. Below is a history of Sales per year so far.

      2021 - $2,374,075
      2022 - $2,971,320
      2023 - $2,935,790
      2024 – Through 11/2024 - $2,127,527

The restaurant business rebounded slowly after the pandemic. 2024 has been extremely challenging and restaurant business overall has declined significantly. The Debtor have taken immediate action to reduce costs and increase marketing to reach positive goals that will allow it to make the payments required under this Plan.

The immediate reason for the bankruptcy filing was the State of Texas' Comptroller's office seizure of certain of the Debtor's assets on October 4, 2024. The Debtor has reached an agreement with the Comptroller's office concerning the repayment of pre-petition obligations, which agreement is reflected in this Plan.

While sales have dropped since the beginning of summer for many businesses, the sales at Valencia's Tex-Mex Garage are sufficient to allow the Debtor to meet its plan obligations, while operating effectively and staying current. As experienced restaurateurs in Houston for decades, Debtor's management is familiar with the inherent fluctuations of the restaurant business and have the capability of weathering a challenging economic climate while maintaining high food quality and the experience its guests expect. The Debtor is confident of its ability to meet its plan obligations.

1. **Description of Debtor's Main Assets**

The Debtor's business assets are described in Schedule A/B (Dkt. 10). The Debtor's main assets are its furniture and restaurant related equipment, as well as food and liquor on hand. Exhibit B provides a more detailed explanation of the Debtor's assets. The Debtor does not own real property or assets not used in the operation of its restaurant. The highest and best use of the Debtor's assets are as they are used in the Debtor's going concern business of operating a Tex-Mex restaurant in Houston, Texas. The Debtor has no business other than its Tex-Mex restaurant.

2. **Debtor's Compliance with the Code**

The Debtor has filed this Plan in good faith. The Debtor represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor believes that the Plan complies with all applicable provisions of the Code. The Debtor does not believe that Subsections (a)(6), (a)(13), and (a)(14) of Section 1129 of the Code are applicable to the Debtor or the Plan. The Debtor affirmatively asserts that the Plan complies with the applicable provisions of the Code ((a)(1)), and has been proposed in good faith and not by any means forbidden by law ((a)(3)). Further, the Debtor affirmatively asserts that it has complied with the applicable provisions of the Code ((a)(2)). The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor ((a)(11)).

**B.   Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as Exhibit A, which is incorporated herein. The Debtor asserts that this Plan satisfies Section 1129(a)(7) of the Code because each holder of a claim or interest with respect to each impaired class of claims and

interests will receive or retain under the Plan, on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Code on such date.

**C.      Ability to make future plan payments and operate without further reorganization**

The Debtor must also show that it will be able to make the required Plan payments and operate the Debtor's business.

The Debtor has provided its asset valuation analysis in Exhibit B, which is incorporated herein.

The Debtor has provided projected financial information attached in Exhibit C, which is incorporated herein.

The Debtor's financial projections show that the Debtor will have sufficient income to operate its business without further reorganization.  Although the Debtor's projected Disposable Income is not sufficient to pay expected Allowed Claims under Class 3 in full, the Debtor shall distribute under this Plan property with a value that is not less than the Debtor's projected Disposable Income for the five (5) year period from and after the Effective Date of this Plan in compliance with Section 1191(c)(2)(B) of the Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Plan Terms**

**Article 1: Summary**

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of the Debtor from future income.

This Plan provides for:    One class of priority claims (Class 1);
                           One class of secured claims (Class 2);
                           One class of non-priority unsecured clams (Class 3);

        One class of equity security holders (Class 4); and
        Administrative Expenses.

Administrative Expenses allowed under Section 503 of the Code will be paid in full on or before sixty (60) days from the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  Non-priority unsecured creditors with Allowed Claims will receive pro-rata distributions of Debtor's Disposable Income after the Class 1 Required Payments.  This Plan provides for the full payment of priority claims and secured claims (Classes 1 and 2).

All creditors and equity security holders should refer to Articles 2 through 6 of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

  2.01 **Class 1**  Allowed claims entitled to priority under § 507(a) of the Code.  These claims include the following:

        (1) Department of Treasury (IRS) in the amount of $43,824.13
        (2) Texas Comptroller of Public Accounts in the amount of $199,959.69
        (3) Texas Workforce Commission in the amount of $10,238.16

  2.02 **Class 2**  Allowed Secured Claim.  These include the following:

        (1) Secured claim of Harris County in the amount of $3,026.91

  2.03 **Class 3**  All allowed non-priority unsecured claims under § 502 of the Code.  This class consists of the Allowed Unsecured Claims of those creditors who have filed unsecured proofs of claim, and the allowed claims of creditors listed under Part 2 of Schedule E/F (Dkt. 12) who did not file a proof of claim.  Class 3 claims shall not include the claim of Rene Hernandez (item 3.26) as such claim was resolved by Debtor's

pre-petition insurance carrier. For avoidance of doubt, Rene Hernandez will not receive any recovery or distribution under this Plan.

2.04 **Class 4** The Equity Interests of the Debtor in the Business Enterprise.

**Article 3: Treatment of Claims and Interests Under the Plan**

**Claims and interests shall be treated as follows under this Plan:**

3.01 **Class 1** (a) This Class 1 claim of the Department of Treasury (IRS) shall be paid in monthly installments in the amount of $888.53 over five (5) years. The first payment shall be due and payable on the Effective Date and each subsequent monthly payment shall be made each month thereafter during the five (5) year period.

(b) The Class 1 claim of Texas Comptroller of Public Accounts shall be paid in monthly installments in the amount of $4,331.49 over five (5) years. The first payment shall be due and payable on the Effective Date and each subsequent monthly payment shall be made each month thereafter during the five (5) year period.

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, the Texas Comptroller of Public Accounts (the "Texas Comptroller") reserves the following rights: (1) any statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) any rights to pursue any non-debtor third parties for tax debts or claims; (3) the payment of interest on the Texas Comptroller's allowed administrative expense tax claims, if any; (4) to the extent that interest is payable with respect to any allowed administrative expense, priority, or secured tax claim of the Texas Comptroller, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (5) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D).

Allowed priority tax claims owed to the Texas Comptroller shall be paid in full pursuant to 11 U.S.C. § 1129(a) in equal monthly installments of principal and interest no later than sixty (60) months of the Effective Date; or as otherwise agreed to by the Texas Comptroller. The Texas Comptroller's allowed priority tax claims shall accrue interest at the statutory rate of interest from the Effective Date until paid in full.

Should the Reorganized Debtor fail to make any payments as required in the Plan or Confirmation Order, or remain current on post-petition and/or post-confirmation ordinary course tax reporting and payment obligations, the Texas Comptroller shall provide written notice of that default to the

6

Debtor and the Debtor's attorney advising of that default and providing the Reorganized Debtor with a period of twenty-four (24) days to cure the default. In the event the default is not cured within twenty-four (24) days, the Texas Comptroller may, without further order of this Court or notice to the Debtor, pursue all rights and remedies available under applicable Texas law to collect the full amount of all taxes, penalties, and interest owed.

(c) The Class 1 claim of the Texas Workforce Commission shall be paid in monthly installments in the amount of $207.59 over five (5) years. The first payment shall be due and payable on the Effective Date and each subsequent monthly payment shall be made each month thereafter during the five (5) year period.

3.02   **Class 2**   Class 2 claims are impaired. Class 2 claims shall retain their pre-petition lien and security interests in the property of the estate. Class 2 claims, plus applicable statutory interest, shall be paid in full on or before the first anniversary of the Effective Date of the Plan.

3.03   **Class 3**   All non-priority unsecured claims under Section 502 of the Code that are Allowed Claims shall be paid quarterly through pro-rata share of distributions of Disposable Income less the amounts paid to Class 1 and Class 2 Claimants for the applicable quarter.

3.04   **Class 4**   Class 4 Equity Holder shall retain their ownership interests in the Debtor's Business Enterprise.

3.05   **Required Payments**   The required monthly payments to Class 1 Claimants shall be made directly by the Reorganized Debtor each month. Net Disposable Income shall be remitted to the Disbursing Agent on a quarterly basis (see Section 4.06 below).

## Article 4: Allowance and Disallowance of Claims

4.01   **Disputed claim**   A *disputed claim* is a claim that has not been allowed or disallowed *[by a final non-appealable order]*, and as to which either:

(i) a proof of claim has been filed or deemed filed, and either the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

| | | |
|---|---|---|
| 4.02 | **Timing for Objections** | The Debtor shall be entitled to file an objection to a governmental unit claim on or before the later of thirty days from the Effective Date or thirty days from the date a governmental unit files a claim. The Debtor shall be entitled to file an objection to claims filed by any other creditor on or before thirty (30) days after the Effective Date. These deadlines may be extended by the Court. |
| 4.03 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Distributions made in respect of any disputed claims shall not be distributed but shall instead be remitted to the Disbursing Agent and held in a "Disputed Claims Reserve" account as provided in Section 4.06 below. |
| 4.04 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim after the Effective Date with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |
| 4.05 | **Bankruptcy Court determination of a disputed claim** | The Court shall have the sole and exclusive jurisdiction authority to adjudicate a disputed claim and determine the amount in which any disputed claim shall be allowed and the extent to which any disputed claim is secured or unsecured. |
| 4.06 | **Subchapter V Trustee as Disbursing Agent** | (a) The Subchapter V Trustee or his successor shall act as the Disbursing Agent for Quarterly Distributions to allowed Class 3 Claims. The Disbursing Agent shall pay the Allowed Claims under Class 3 from Disposable Income less the required payments to those Class 1 and Class 2 Claimants for the applicable quarter (the "Net Disposable Income"). Until such time as Allowed Claims under 1, 2, and 3 are paid as provided in the Plan, the Reorganized Debtor shall remit to the Disbursing Agent quarterly all Net Disposable Income generated by the Reorganized Debtor for the previous quarter along with an accounting of how the Net Disposable Income was calculated. |
| | | (b) The Disbursing Agent shall then calculate the payments required under the Plan to members of Class 3 holding Allowed Claims and make such distributions accordingly. |

(c) The calculations required by the Plan to determine the amount of the distributions to the holders of Allowed Claims and to be reserved for disputed claims shall be made as if all disputed claims were Allowed Claims in the full amount claimed by the holders of Allowed Claims. No payment or distribution shall be made with respect to any claim to the extent it is a disputed claim unless and until such disputed claim becomes an Allowed Claim.

(d) At such time as any disputed claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the Disputed Claims Reserve account and distributed to other creditors with Allowed Claims pursuant to their pro rata share. The Disbursing Agent shall not be required to withhold funds, designate reserves, or make other provisions for the payment of any claims that have been disallowed by a final non-appealable order.

(e) At such time as a disputed claim becomes an Allowed Claim, the distributions due on account of such Allowed Claim and accumulated in the Disputed Claims Reserve account shall be released and paid to the holder of such Allowed Claim.

(f) Until such time as the claims held by members of Class 3 have either been paid as provided in the Plan or disallowed by final non-appealable order, the Disbursing Agent shall file with the Court and provide copies to the holders of claims in Class 3 a quarterly report within 45 days of the end of each calendar quarter setting forth the amount of Disposable Income for the previous quarter, the manner in which Disposable Income was calculated, the amount of Net Disposable Income, and the distributions and reserves made on account of the Net Disposable Income in such quarter.

(g) The Disbursing Agent shall be compensated for his post-confirmation duties at this normal hourly rate and shall be paid from the quarterly Net Disposable Income. The amount of Net Disposable Income distributed or reserved to creditors will be net of the Disbursing Agent's fees. The Disbursing Agent's

9

fees and expenses shall be disclosed in the quarterly report filed with the Court.

**Article 5: Provisions for Executory Contracts and Unexpired Leases**

| | | | |
|---|---|---|---|
| 5.01 | **Assumed executory contracts and unexpired leases** | (a) | The Debtor hereby assumes the executory contracts and unexpired lease described in Schedule G (Dkt. 13). Any cure amounts shall be paid to such counter-parties as part of the payments to Class 3 Allowed Claims. The Debtor does not have any other executory contracts or unexpired leases as of the Effective Date, but to the extent any such exist, they are hereby rejected. |

**Article 6: Means for Implementation of the Plan**

6.01    The Debtor shall remit to the Subchapter V Trustee its Net Disposable Income on a quarterly basis. The Debtor shall make the Required Payments to holders of claim in Class 1 on a monthly basis.

6.02    **Disposable Income**    "Disposable Income" includes income that is received by the Debtor from its business operations that is not reasonably necessary to be expended for the payment of its expenditures necessary for the continuation, preservation, or operation of the Debtor's business.

**Article 7: General Provisions**

7.01    **Definitions and rules of construction**    The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan (and not defined otherwise herein), and they are supplemented by the following definitions:

- "Allowed Claim" – means a claim asserted against the Debtor which is either allowed under Debtor's Plan or by final order of the Court.

- "Confirmation Order" – means the Court's Order confirming the Debtor's Plan, as may be amended.

- "Petition Date" – means October 6, 2024

7.02    **Effective date**    The Effective Date of this Plan is the first business day of the month following the date that is 30 days after the entry of the Confirmation Order. If, however, a stay of the

10

|      |      |      |
|------|------|------|
|      |      | Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 7.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 7.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 7.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 7.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 7.07 | **Corporate governance** | Ricardo Valencia shall manage the Reorganized Debtor's business post-confirmation.  Vienna Bement shall also be involved with the day-to-day management of the restaurant. |
| 7.08 | **Retention of Jurisdiction** | To the broadest extent allowable by law, the Court shall have continuing jurisdiction to interpret and enforce this Plan, including but not limited to by injunction and contempt. |
| 7.09 | **Vesting** | All property of the bankruptcy estate is vested in the Debtor on the Effective Date, free and clear of all claims and encumbrances and/or charges except as provided in the Plan and/or the Confirmation Order. |
| 7.10 | **Injunction** | Upon entry of the Confirmation Order, all holders of Claims against the Debtor or the bankruptcy estate shall be prohibited from asserting against the Debtor, the reorganized Debtor, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the date of entry of the Confirmation Order, whether or not such holder of a Claim filed a Proof of Claim. |

7.11 **Lawsuits** On the Effective Date, all lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, in connection with any Claim against the Debtor, except for Proof of Claim objections, shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of any such claim in any manner other than as prescribed by the Plan. All parties to any such actions shall be enjoined from taking any action to impede the immediate and unconditional dismissal of any such action.

7.12 **Default** If there is a default in payment of any Allowed Claim under the Plan, the default must be cured within 24 days of written notice of such default. If the default is not cured within such 24-day period, the creditor may seek any rights available under the Code or under applicable non-bankruptcy law.

7.13 **Notice** Any notice to the Debtor must be in writing and sent by first class regular mail, certified mail-return receipt requested, and by email as follows:

>Attn: Ricardo Valencia
>2009 W. 34th St., Suite A
>Houston, Texas 77018

With a copy to:

>Walter J. Cicack
>Hawash Cicack & Gaston LLP
>711 W. Alabama St., Suite 200
>Houston, Texas 77006
>wcicack@hcgllp.com

**Article 8: Discharge – Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

> (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or

> (ii) excepted from discharge under § 523(a) of the Code.

**Article 9: Other Provisions**

| | | |
|---|---|---|
| 9.01 | **Incorporation By Reference** | The Debtor's explanation of its history and assets is incorporated into the Plan. All documents referenced herein and/or attached hereto are incorporated into the Plan by reference. |
| 9.02 | **Plan Exhibits** | Exhibit A – Liquidation Analysis |
| | | Exhibit B – Asset Valuation Analysis |
| | | Exhibit C – Projections with respect to the ability of the Debtor to make Plan Payments |

Date: January 6, 2025

Respectfully submitted,

"Debtor"

VALENCIA HOSPITALITY GROUP, LLC

By: _____
      Ricardo Valencia, Member
      and Manager


*/s/ Walter J. Cicack*
Walter J. Cicack
Texas Bar No. 04250535
wcicack@hcgllp.com
William R. Liles
Texas Bar No. 24083395
wliles@hcgllp.com
HAWASH CICACK & GASTON LLP
711 W. Alabama St., Suite 200
Houston, Texas 77006
(713) 658-9015 – tel/fax
**Counsel for Debtor**

14

# EXHIBIT A

## Liquidation Analysis

The Debtor valued its assets at $463,251.33 at the time of the bankruptcy filing (See Dkt. No. 10). See Exhibit B to the Plan. This value was not based on a liquidation value. The Debtor values its assets at approximately $167,210.13 on a liquidation basis. The Debtor's principal, Ricardo Valencia, has been in the restaurant business for over 25 years. The Debtor's liquidation value is based upon Mr. Valencia's expert opinion.

Using the liquidation value of Debtor's assets, the payments under the Plan of projected Disposable Income will likely exceed the liquidation value of Debtor's assets. The payments absolutely required under the Plan for the five (5) year duration of the Plan equal $257,048.89, plus applicable interest. In addition, the Debtor projects that it will generate Net Disposable Income (see Exhibit C to the Plan) of to be distributed to Class 3 Allowed Unsecured Claims. The Plan clearly contemplates total plan payments that far exceed the liquidation value of the Debtor's assets.

The Debtor is not aware of any potential chapter 5 claims.

The Debtor asserts that the Plan satisfies Section 1129 (a)(7) of the Code based on the liquidation value of its assets and the payments required under the Plan.

**EXHIBIT B**
**Asset Valuation Analysis**

| Assets – (See Dkt. 10) | Market Value | Liquidation Value |
|---|---:|---:|
| Cash and Cash Equivalents | 26,406.36 | 26,406.36 |
| Deposits | 19,300.00 | 19,300.00 |
| Inventory | 34,943.53 | 34,943.53 |
| Office Furniture, Fixtures equipment | 381,041.20 | 85,000.00 |
| Machinery | 1,560.24 | 1,560.24 |
| **Total:** | **463,251.33** | **167,210.13** |

**EXHIBIT C**

**FINANCIAL PROJECTIONS**

**[WILL BE SUPPLEMENTED ON OR BEFORE JANUARY 8, 2025]**